CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
MAY 1 8 2007
JOHN F. CORCORAN, CLERK
BY: /s/ Jay Coleman
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| LAURIE C. FRANCIS, | CIVIL NO. 6:06cv00025 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| TOWN OF BROOKNEAL, | |
| Defendant | JUDGE NORMAN K. MOON |

This matter is before the Court on a motion to dismiss filed by Defendant Town of Brookneal ("Defendant" or "Town") on November 14, 2006 (docket entry no. 16). On January 23, 2007, I ordered the parties to engage in discovery limited to the question of the number of employees Defendant had for purposes of Title VII of the Civil Rights Act of 1964 and ordered the parties to submit briefs on this question. For the reasons stated below, Defendant's motion to dismiss the Title VII causes of action in the amended complaint filed by Plaintiff Laurie C. Francis ("Plaintiff") will be GRANTED in an order to follow; Defendant's motion to dismiss the breach of contract claim and the claim alleging a violation of the Fair Labor Standards Act will be DENIED in an order to follow.

Following her termination, Plaintiff sued Defendant, her former employer, alleging violations of Title VII, breach of contract, and a violation of the Fair Labor Standards Act. Defendant filed a motion to dismiss the Title VII claims, arguing that, among other things, Defendant was not an "employer" as that word is defined in 42 U.S.C. § 2000e(b). Defendant

also moved to dismiss the breach of contract claim and the claim alleging violation of the Fair Labor Standards Act.

## I. STANDARD OF REVIEW

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a Rule 12(b)(6) motion, a court must accept all allegations in the complaint as true, must draw all reasonable inferences in favor of the plaintiff, and should not dismiss unless the defendant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of [the plaintiff's] claim" that would allow the plaintiff relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957); *see also Edwards*, 178 F.3d at 244; *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254–55 (W.D. Va. 2001). Stated differently, a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514 (2002).

As the Fourth Circuit has held, however, *Swierkiewicz* did not eliminate the requirement that a plaintiff "must sufficiently allege facts to allow the Court to infer that all elements of each of his causes of action exist." *See Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 344–45 (4th Cir. 2006), *reh'g en banc denied*, 467 F.3d 378 (4th Cir. 2006); *see also Inman v. Klöckner-Pentaplast of America, Inc.*, No. 3:06cv00011, 2006 WL 3821487, at *4 (W.D. Va. Dec. 28, 2006) (collecting post-*Swierkiewicz* holdings in Rule 12(b)(6) cases in the Fourth Circuit). But motions filed under Rule 12(b)(6) "should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989).

If, on a motion to dismiss brought pursuant to Rule 12(b)(6), the parties present to the

- 2 -

Case 6:06-cv-00025-NKM-mfu   Document 27   Filed 05/18/07   Page 2 of 14   Pageid#: 914

court matters outside the pleading, the motion must be treated as one for summary judgment pursuant to Rule 56. *See* Fed. R. Civ. P. 12(b). Rule 56(c) provides that a court shall grant summary judgment if the matters "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment under Rule 56 is appropriate only when the court, viewing the record as a whole and drawing reasonable inferences in the light most favorable to the nonmoving party, determines that the Rule 56(c) standard has been met. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994); *Terry's Floor Fashions, Inc. v. Burlington Indus., Inc*, 763 F.2d 604, 610 (4th Cir. 1985).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324.

A court must grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... [must] by affidavits or as otherwise provided in ... [Rule 56] set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631

- 3 -

Case 6:06-cv-00025-NKM-mfu  Document 27  Filed 05/18/07  Page 3 of 14  Pageid#: 915

(W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). If the proffered evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Anderson*, 477 U.S. at 242). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Id.* (quoting *Celotex*, 477 U.S. at 317).

## II. DISCUSSION: COUNTS ONE, TWO, THREE (Title VII)[1]

Plaintiff's amended complaint alleges in Counts One, Two, and Three that Defendant violated Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000e to 2000e-17.

Title VII only applies to "employers," which "means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ...." 42 U.S.C.A. § 2000e(b) (2007). The parties do not dispute that Defendant is a person nor that Defendant is engaged in an industry affecting commerce. The only issue here is whether Defendant "has fifteen or more employees" for the relevant time period.[2]

Title VII defines "employee," with certain exceptions not relevant here, as "an individual employed by an employer." *Id.* § 2000e(f). "In adopting this circular definition, Congress has left the term 'employee' essentially undefined insofar as an employee is to be distinguished from an independent contractor." *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 259 (4th Cir. 1997). "[T]raditional principles of agency law," *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 190 (4th

---

[1] Because matters outside the pleading were presented to and accepted by the court, the Rule 56 standard of review is appropriate only for the issue of the number of employees for Title VII purposes. *See, e.g., Arbaugh v. Y&H Corp.*, 126 S. Ct. 1235 (2006) (holding that the numerosity requirement for Title VII is an element of a claim and not a jurisdictional bar).

[2] For purposes of this discussion, I will assume—without deciding—that the relevant time period is 2003 through 2006.

- 4 -

Cir. 1998)—specifically, "the general common law of agency" and not the law of any one state, *Cilecek*, 115 F.3d at 259–60—should form the basis for an analysis of the definition of a Title VII employee. Additionally, whether a person is an employee for Title VII purposes is a question of law for the court. *Cilecek*, 115 F.3d at 261.

The factors in such an analysis include:

(1) "the hiring party's right to control the manner and means by which the product is accomplished";
(2) "the skill required";
(3) "the source of the instrumentalities and tools";
(4) "the location of the work";
(5) "the duration of the relationship between the parties";
(6) "whether the hiring party has the right to assign additional projects to the hired party'";
(7) "the extent of the hired party's discretion over when and how long to work";
(8) "the method of payment";
(9) "the hired party's role in hiring and paying assistants";
(10) "whether the work is part of the regular business of the hiring party";
(11) "whether the hiring party is in business";
(12) "the provision of employee benefits";
(13) "the tax treatment of the hired party."

*Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989); *Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 313 (4th Cir. 2001); *Derthick v. Bassett-Walker, Inc.*, 904 F. Supp. 510, 518 (W.D. Va. 1995); *see also Walters v. Metro. Educ. Enters., Inc.*, 519 U.S. 202, 211–12 (1997) (implying that courts examine "traditional principles of agency law" and stating that the "ultimate touchstone" is "whether an employer has employment relationships" with the requisite number of people for the requisite length of time).

There is no question that the degree of control exercised by the employer over the alleged employee is the "critical question." *Bender*, 159 F.3d at 190; *Cilecek*, 115 F.3d at 260; *see also Farlow*, 259 F.3d at 313 (calling the right to control "[t]he touchstone inquiry"). This inquiry focuses on the "primary activity contracted for and not the peripheral, administrative acts relating to such activity." *Robb v. United States*, 80 F.3d 884, 889 (4th Cir. 1996). These "peripheral,

- 5 -

administrative acts" may include compulsory attendance at staff meetings and complying with work hours originating from the employer. *See Farlow*, 259 F.3d at 314. The less an employer oversees "the actual rendering of [the person's] services," the less likely it will be that the person is an employee. *See id.*

### A. Discussion: Jean Douglas

According to Plaintiff, Jean Douglas ("Douglas")—who provided cleaning services to Defendant and other local businesses—"was paid a monthly salary," "work[ed] three days a week for several hours each day," "was required to be [at] work on her scheduled days and at scheduled times," "was required to contact her supervisor" if she could not be at work on those days or at those times," "received a Christmas bonus/gift each year," and was supplied with her cleaning supplies by Defendant. (Decl. of Laurie C. Francis ¶ 15)

Defendant's acting town manager, J. Michael Crews, disagrees only with whether Douglas was required to contact her supervisor if she could not be at work (Crews states she was not, but that "as a matter of courtesy," Douglas would call a town employee) and with whether Douglas even had a supervisor at all (Crews states she did not). (Reply Aff. of J. Michael Crews ¶¶ 2, 3)

Crews states that no one supervised Douglas or directed how she did her cleaning; that no one set the duties, hours, or work times for Douglas or for the company she ran, Jean's Cleaning Service; and that the only service Douglas was required to perform was that certain town premises be cleaned. (Reply Aff. of J. Michael Crews ¶¶ 2–3) Additionally, Douglas's specific work schedule was not required by Defendant, but was mutually agreeable because it allowed Douglas to schedule and perform cleaning services for her other clients and allowed Defendant's employees to know when their premises would be cleaned. (Reply Aff. of J. Michael Crews ¶ 3)

Jean's Cleaning Service sent invoices to Defendant; in return, Defendant paid Jean's Cleaning Service without withholding taxes or social security payments. (Reply Aff. of J. Michael Crews ¶ 4) Defendant did not offer employee benefits or insurance coverage to Douglas, and she never appeared on Defendant's payroll. (Reply Aff. of J. Michael Crews ¶ 4)

After an examination of these facts in light of the *Reid/Farlow* factors, I find that Douglas is not an employee under traditional common law and is therefore not an employee for Title VII purposes. The first factor, the "right to control the manner and means by which" Douglas accomplished her tasks, clearly favors a finding that Douglas was an independent contractor. Defendant's acting town manager stated that no town employee "supervised ... Douglas or directed how she did her cleaning" (Reply Aff. of J. Michael Crews ¶ 2) and Plaintiff does not contest that assertion.

Even those facts that are contested by the parties regarding the right to control Douglas' work are rendered irrelevant by *Robb*'s requirement that the control inquiry should focus on the "primary activity contracted for and not the peripheral, administrative acts relating to such activity." *Robb*, 80 F.3d at 889. Plaintiff claims that Douglas was required to be at work on set days and at set times and that she had to contact her supervisor if she were to miss work. Defendant disagrees. But these issues are the sort of "peripheral, administrative" acts relating to Douglas' cleaning and they do not relate to the actual cleaning itself, which is the "primary activity contracted for." Although the control issue is not dispositive, it is, again, the "critical question," *Bender v. Suburban Hosp., Inc.*, 159 F.3d 186, 190 (4th Cir. 1998); *Cilecek v. Inova Health Sys. Servs.*, 115 F.3d 256, 260 (4th Cir. 1997), and here weighs in favor of a finding that Douglas is an independent contractor.

- 7 -

Case 6:06-cv-00025-NKM-mfu   Document 27   Filed 05/18/07   Page 7 of 14   Pageid#: 919

An examination of the remaining factors does not reveal a strong conclusion either that Douglas is an independent contractor or that she is an employee. The only factor that clearly favors a finding that Douglas is an employee is that the town provided Douglas with the cleaning supplies she used. Two of the factors clearly favor a finding that Douglas is an independent contractor: first, Douglas was not salaried and did not appear on Defendant's payroll but instead, she billed Defendant monthly for the services she provided; second, Defendant never withheld taxes or social security payments and never offered her benefits or insurance coverage. Finally, several factors do not establish a clearly favorable decision on either side. Although Douglas' cleaning service does not necessarily fit into the category of a highly skilled position, neither does she "perform functions that are an essential part of the company's normal operations," *see N.L.R.B. v. United Ins. Co. of Am.*, 390 U.S. 254, 259 (1968), which here would be running a town. Although Douglas performed the work on Defendant's premises, there is no other option when the task required of her entails cleaning Defendant's buildings and their contents. And although the duration of the relationship between Douglas and Defendant extended from the beginning of the relevant timeframe until the end, it appears that Douglas provided similar services for clients or entities other than Defendant.

Based on these considerations, I find that Douglas is an independent contractor, and, as such, is not an "employee" for purposes of Title VII.

## B. Discussion: Staffing Agency Employees

At various times during the years in question, Defendant used the services of ABH Staffing, Inc. ("ABH"), a temporary employment agency, to supply maintenance workers.[3] In support of her argument that these workers are employees and not independent contractors,

---

[3] These people include Antwann Miller, Charles Wynn, Ryan Dillard, Cory Chandler, Brook Boyd, Ronald Guy,

Plaintiff alleges that Defendant had "full control" and "total supervision" over these workers; that these workers were required to notify "their supervisor" if they were to be late or absent; that the workers were required to attend sexual harassment training; that they were required to sign a certificate agreeing to abide by the town's personnel manual; that some of the employees were long-term ones; and that they were required to attend employee functions and meetings. (Decl. of Laurie C. Francis ¶¶ 12, 14)

In response, Crews stated in his affidavit that the relationship between Defendant and ABH was subject to a contract that states in no uncertain terms that the worker "is an employee of ABH"; that it did not have full control over these workers, nor control over which specific worker ABH would send to Defendant; that the supervisor that the workers had to contact if they were to be late or absent was not Crews, but their supervisor at ABH; that Defendant did not train these workers; that it did not withhold taxes or social security payments; that it did not provide benefits or insurance coverage; that these workers did not appear on Defendant's payroll; that it had no control over who and how ABH screened, hired, trained, supervised, paid, insured, provided benefits to, withheld taxes from, or fired its employees; that it was ABH who provided benefits, worker's compensation, unemployment insurance coverage, training, and supervision to these workers; and that it was ABH who hired, fired, and paid the workers. (Reply Aff. of J. Michael Crews ¶¶ 10–13)

After an examination of these facts in light of the *Reid/Farlow* factors, I find that the temporary workers sent by ABH are not employees under traditional agency common law and are therefore not employees for Title VII purposes. The "right to control" factor weighs in favor of Defendant: as Crews states in his affidavit, "[w]hen I had a discrete job that needed to be done,

---

Charles Clark, Gerald Milner, Vincent Canada, C. Acree, L. David, W.G. Davis, R. Glass, and E. Davis.

such as the grass on the ballfield needing to be cut, I would call ABH Staffing and tell the coordinator what needed to be done." (Reply Aff. of J. Michael Crews ¶ 10). Although Plaintiff states in a conclusory fashion that Defendant "had full control" over these workers (without supporting that assertion), Crews states that once a worker arrived, "neither I nor anyone else at the Town of Brookneal trained or controlled such workers." (Reply Aff. of J. Michael Crews ¶ 10) I conclude that the right-to-control factor supports a finding that these workers are independent contractors and not employees.

The other factors, too, weigh heavily in favor of Defendant. As with Douglas, these workers were not on Defendant's payroll and, indeed, were not even paid by Defendant. Defendant therefore never withheld taxes or social security payments and never offered these workers employment benefits or insurance coverage. With one exception, all of the workers were short-term.[4] And, as with Douglas, although these workers performed their duties on Defendant's premises, there was no other option: if Defendant's ballfield needs to be cut, the worker assigned to such a task cannot complete it elsewhere. Finally, and importantly, the contract between Defendant and ABH states—clearly—that the workers are not employees of Defendant but are instead employees of ABH. "[T]he parties' beliefs regarding the nature of the employment relationship are significant" in the Fourth Circuit. *See Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 313 (4th Cir. 2001). As is evident by the contract, neither ABH nor Defendant believed these workers to be employees of Defendant.

---

[4] ABH assigned Gerald Milner to Defendant regularly from September 2003 until the time Defendant hired him in November 2005. The fact that Defendant hired Milner in November 2005—and thereafter included him in its calculation of the number of employees it had—indicates that *prior to* November 2005, Milner was not an employee of Defendant but was merely an independent contractor. *See, e.g., Farlow v. Wachovia Bank of N.C., N.A.*, 259 F.3d 309, 314–15 (4th Cir. 2001) (finding that an employment relationship was intended *after* a worker, who had previously worked off-site for an employer for "several years," moved on-site and worked for several months).

Therefore, I find that the ABH workers are independent contractors, and, as such, are not "employees" for purposes of Title VII.

### C. Discussion: Bill Gillespie

From May 2003 until late June 2006, Bill Gillespie ("Gillespie") worked for Defendant under the title of Town Manager pursuant to contracts between him and either his then-employer or consulting firms he formed. On June 30, 2006, Gillespie submitted a letter of resignation but continued to work as a consultant. (Decl. of Laurie C. Francis ¶ 16) Plaintiff claims that Defendant paid Gillespie's then-employer—"the Regional Commission"—for Gillespie's consulting services from 2003 until 2004. (Decl. of Laurie C. Francis ¶ 16) In 2004, Gillespie retired from the Regional Commission, but continued to work for Defendant pursuant to contracts between Gillespie and Defendant's consulting firms. (Decl. of Laurie C. Francis ¶ 16) During this time, Gillespie "began his own consulting firm and was contracted to work for other agencies lending his engineering background to projects they needed assistance with." (Decl. of Laurie C. Francis ¶ 16) Plaintiff alleges that the reason Gillespie and Defendant agreed to this arrangement to keep Gillespie "off of payroll" was to protect his retirement benefits that he could have otherwise lost. (Decl. of Laurie C. Francis ¶ 16) Plaintiff alleges that because Gillespie officially resigned from his position, he must have been an employee and not an independent contractor.

Defendant, however, states that Gillespie set his own schedule; that he determined on his own how to help Defendant; that he provided the majority of his services from his home; that Defendant and Gillespie always viewed Gillespie's status as one of independent contractor; that Defendant never withheld taxes or social security from any payments it made to Gillespie or to

- 11 -

the consulting company for whom he worked; that Defendant never offered benefits or insurance coverage to Gillespie; and that he never appeared on Defendant's payroll.

For many of the same reasons that I found that Douglas and the ABH workers were independent contractors and not employees, I find, too, that Gillespie is an independent contractor. First, Crews' affidavit is clear in that Gillespie "determined his own methods for assisting" Defendant. Plaintiff does not allege anything that would allow me to infer that Defendant had the right to control Gillespie in how he provided the services Defendant sought. Although not dispositive of the issue, the lack of the right to control Gillespie's work favors a finding that he is an independent contractor. The other factors, too, support this conclusion: Gillespie's work fit in to the highly skilled category, he completed the majority of the work offsite, payments were made either to Gillespie's employer (the Regional Commission) or to consulting firms he formed, Gillespie was never offered benefits or insurance coverage, and Defendant did not withhold taxes or social security payments. And, as with the temporary workers, Defendant and Gillespie's belief was that he was an independent contractor and not an employee.

\* \* \*

Having concluded that Douglas, the temporary workers, and Gillespie are independent contractors and not employees, Defendant could have had fifteen or more employees during the relevant time period for, at maximum, seven weeks in 2006.[5] Defendant therefore is not an employer under § 2000e(b) and Plaintiff's Title VII claims must be dismissed.[6]

---

[5] Assuming that A. Collins, D. Hamlor, and T. Smith are all employees, Defendant would have fifteen employees for each week from March 4, 2006 through April 21, 2006. Because Title VII does not apply here, I need not answer the question of whether these three workers are employees for Title VII purposes.

[6] I will therefore not address Defendant's other grounds for dismissal of Counts One, Two, and Three.

- 12 -

## III. DISCUSSION: COUNT FOUR (Breach of Contract)

Plaintiff's amended complaint alleges in Count Four that Defendant breached the employment agreement between Plaintiff and Defendant in that Defendant did not provide family health and dental coverage to Plaintiff. Defendant claims that Plaintiff has failed to state a claim upon which relief could be granted. Defendant argues that because the employment agreement states that Defendant would provide Plaintiff "with the same benefits provided to all full time employees and Department Heads of the Town of Brookneal" and because Plaintiff has only alleged that Defendant is paying for a single male department head's insurance (and, presumable has not alleged that Defendant is paying for *all* full time employees' insurance), her claim must fail. Respectfully, I disagree. It could be, of course, that "all" of Defendant's full time employees and Department Heads are this single male department head. The employment agreement provision at issue is certainly ambiguous, but it would be premature to dismiss Plaintiff's breach of contract claim at the Rule 12(b)(6) stage.

## IV. DISCUSSION: COUNT FIVE (FLSA)

Plaintiff's amended complaint alleges in Count Five that Defendant violated the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. §§ 201–19, by not paying her for overtime. Defendant argues that FLSA does not mandate monetary payments for overtime for political subdivisions of a state, but instead permits those political subdivisions to allow compensatory time off in lieu of payment. Additionally, Defendant argues, FLSA allows political subdivisions and its employees to agree to an arrangement for such compensatory time off.

Although both of Defendant's arguments are true, FLSA still requires that compensatory time off be at a rate of one and one-half hours of compensatory time off per one hour worked. *See* U.S.C.A. § 207(*o*)(1) (2007). The agreement between the parties only provides for 1:1 time,

Case 6:06-cv-00025-NKM-mfu    Document 27    Filed 05/18/07    Page 13 of 14    Pageid#: 925

stating that Plaintiff "shall be compensated for any additional time beyond the regular 40-hour workweek on an hour of time off for each hour worked (compensatory leave)." Plaintiff here has alleged that she was entitled to overtime pay and that Defendant failed to pay her, whether that was via money or compensatory time off. Plaintiff has stated a claim under FLSA.[7]

## V. CONCLUSION

For the foregoing reasons, I will GRANT Defendant's motion to dismiss Counts One, Two, and Three and I will DENY Defendant's motion to dismiss Counts Four and Five, all in an order to follow.

It is so ORDERED.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion to all counsel of record.

ENTERED: _____
United States District Judge

Date: May 18, 2007

---

[7] Additionally, the parties' arguments—originating with Plaintiff and not Defendant—regarding whether Plaintiff was an exempt employee are more appropriate at a later stage than at the motion to dismiss stage.